763 So.2d 499 (2000)
ZULIANA de AVIACION, a foreign corporation, Appellant,
v.
Maria HERRERA and Catherine Herrera, Appellees.
No. 99-1015.
District Court of Appeal of Florida, Third District.
July 19, 2000.
*500 Schreiber Rodon-Alvarez, P.A., and Gerhart Schreiber, for appellant.
Hardeman & Suarez, P.A., and Richard A. Warren, for appellees.
Before JORGENSON, COPE and FLETCHER, JJ.
COPE, J.
Zuliana de Aviacion, an international airline based in Venezuela, appeals a final judgment against it for negligence, false imprisonment, and intentional infliction of emotional distress. We affirm.

I.
In 1994 Maria Herrera and Catherine Herrera (the "Herreras"), who are mother and daughter, held tickets on Zuliana for a flight from Bogota, Colombia, to Miami. The Herreras became involved in a verbal altercation with Zuliana's gate personnel first, over excess luggage charges and next, over the discovery that the flight would proceed through Medellin, Colombia, a city in which an Herrera relative had died in a plane crash and through which the Herreras did not wish to fly. The Herreras asked to be given a refund, or to be placed on another flight which did not proceed through Medellin. The airline refused to give a refund and indicated that the only alternative was for the Herreras to wait two additional days for a Zuliana flight that did not stop in Medellin. The Herreras threatened to sue the airline and to have the airline owner (whom they know) fire the gate personnel.
The Herreras asked to use the telephone to call the airline owner in Miami to see if he could place them on another airline, but the gate personnel refused to let them make the call. Insults were exchanged. The police were called and they directed the gate personnel to allow the Herreras telephone the airline owner. The Herreras were unsuccessful in reaching him.
The Herreras decided that they had no alternative but to proceed with the flight as scheduled. The flight proceeded to Medellin without incident and then continued to its next scheduled stop which was Maracaibo, Venezuela.
In the meantime, a Zuliana employee in Bogota called Zuliana's station manager in Maracaibo, advising him to take precautions because of the Herreras' behavior.
When the aircraft landed in Maracaibo, the Herreras were taken off the aircraft, placed in a terminal bathroom and strip searched, including a body cavity search, by a female member of the Venezuelan National Guard. When Maria Herrera refused to continue the flight without an explanation of who ordered the search, the flight left for Miami without the Herreras, but with their luggage. The airline then refused to provide the Herreras with food or lodging unless they signed a release. Eventually, due to the fact that Maria was Spanish-born, the Herreras were able to obtain the assistance of the Spanish Consul in locating food and lodging for the evening. The Herreras returned to Miami the following day.
The Herreras sued Zuliana and the jury returned a verdict in their favor on their claims for negligence, false imprisonment, and intentional infliction of emotional distress. In addition to compensatory damages the jury awarded $1 million in punitive damages. Zuliana has appealed.

II.
Zuliana's main argument on appeal is that the Herreras' claims are preempted by, and not actionable under, the Warsaw Convention. In the trial court, Zuliana pled that the damages the Herreras could recover were limited by the Warsaw Convention. Zuliana filed motions for partial summary judgment, asserting that punitive damages could not be recovered under the Warsaw Convention, and that the claims for false imprisonment and assault and battery were preempted by the Warsaw Convention. Zuliana did not obtain a *501 ruling on these motions prior to trial and did not raise these issues during trial. Ordinarily we would rule that these defenses were not properly preserved for appellate review.
However, the defense Zuliana attempts to raise here is that the Herreras' causes of action have been preempted by the Warsaw Convention. See El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). The First District Court of Appeal has taken the position that the question whether a state-law cause of action has been preempted can be raised for the first time on appeal, but "appellate review is only possible when resolution of the issue does not require factual determinations." Florida Automobile Dealers Industry Benefit Trust v. Small, 592 So.2d 1179, 1183-84 (Fla. 1st DCA 1992) (citations omitted).
This court has treated as fundamental error which can be raised for the first time on appeal "[t]he error of imposing on a defendant compensatory damages which are not authorized by law and which are contrary to law...." Security Bank N.A. v. BellSouth Advertising & Publishing Corp., 679 So.2d 795, 803 (Fla. 3d DCA 1996) (citations and internal quotation marks omitted), approved, 698 So.2d 254, 256 (Fla.1997); Keyes Co. v. Sens, 382 So.2d 1273, 1276 (Fla. 3d DCA 1980).
We agree with the First District that the preemption issue can be entertained for the first time on appeal but only if it can be resolved from the already-existing record and not if resolution of the issue would require further fact finding. See Florida Automobile Dealers Industry Benefit Trust, 592 So.2d at 1183-84. In the present case the factual record is sufficiently clear to allow consideration of Zuliana's preemption argument.

III.
As stated in El Al, "the Convention addresses and concerns, only and exclusively, the airline's liability for passenger injuries occurring on board the aircraft or in the course of any the operations of embarking or disembarking. The Convention's preemptive effect on local law extends no further than the Convention's own substantive scope. A carrier, therefore, is indisputably subject to liability under local law for injuries arising outside of that scope: e.g., for passenger injuries occurring before any of the operations of embarking or disembarking." 525 U.S. at 172-73, 119 S.Ct. 662 (internal quotations and citations omitted).
The same principles apply in this case, where the injury occurred after the Herreras were forced to disembark from the airplane. They were turned over to the National Guard and taken to a restroom in the terminal where the National Guard performed the strip search. As this occurred after disembarkation, the Warsaw Convention does not apply. The Seventh Circuit has reached the same conclusion, on similar facts, stating that "any injury [plaintiff] suffered ... was not sustained in the course of embarking or disembarking from the airplane." Schroeder v. Lufthansa German Airlines, 875 F.2d 613, 618 (7th Cir.1989). Accordingly, there was no Warsaw Convention barrier to the Herreras' state law claims. See El Al, 525 U.S. at 172-73, 119 S.Ct. 662.

IV.
Zualiana argues alternatively that the trial court erred by denying its motion to amend its pleadings to conform to the evidence. At trial Zuliana attempted to rely on a defense that the Herreras were taken off the airplane in Maracaibo by Maria Granadillo, an employee of Security Airline Corporation ("SAC"), a company which performs security functions under contract to Zuliana. Zuliana wished to argue that the strip search was unauthorized activity carried out by Granadillo and the National Guard, and was not attributable to Zuliana itself.
We agree with the trial court that there is no indication this unpled defense was *502 tried by consent. Thus, the motion was properly denied. Although that disposes of the matter, the evidence showed that it was a Zuliana employee in Bogota who telephoned the Zuliana station manager in Maracaibo, reporting problems with the Herreras. The evidence certainly permitted the jury to conclude that it was Zuliana employees who instigated the strip search.
Affirmed.